# EXHIBIT F
# Part 1 of 3

EX-3.(I).1 2 dex3i1.htm CERTIFICATION OF DESIGNATION OF PREFERENCES AND RIGHTS OF SERIES E

Exhibit 3(i).1

## CERTIFICATE OF DESIGNATIONS OF PREFERENCES AND RIGHTS OF SERIES E CONVERTIBLE PREFERRED STOCK OF GLOBAL EPOINT, INC. A NEVADA CORPORATION

The undersigned, John Pan certifies that:

1. He is the duly acting President and Secretary of Global ePoint, Inc., a corporation organized and existing under the General Corporation Law of Nevada of the State of Nevada (the *"Corporation"*).

2. Pursuant to authority conferred upon the Board of Directors by the Amended and Restated Articles of Incorporation of the Corporation, as amended, and pursuant to the provisions of Section 78.1955 of the General Corporation Law of Nevada, said Board of Directors, has previously designated the Corporation's Series A Convertible Preferred Stock *("Series A Preferred Stock")*.

3. Pursuant to authority conferred upon the Board of Directors by the Amended and Restated Articles of Incorporation of the Corporation, as amended, and pursuant to the provisions of Section 78.1955 of the General Corporation Law of Nevada, said Board of Directors, has previously designated the Corporation's Series B Convertible Preferred Stock *("Series B Preferred Stock")*.

4. Pursuant to authority conferred upon the Board of Directors by the Amended and Restated Articles of Incorporation of the Corporation, as amended, and pursuant to the provisions of Section 78.1955 of the General Corporation Law of Nevada, said Board of Directors, has previously designated the Corporation's Series C Convertible Preferred Stock *("Series C Preferred Stock")*.

5. Pursuant to authority conferred upon the Board of Directors by the Amended and Restated Articles of Incorporation of the Corporation, as amended, and pursuant to the provisions of Section 78.1955 of the General Corporation Law of Nevada, said Board of Directors, has previously designated the Corporation's Series D Convertible Preferred Stock *("Series D Preferred Stock")*.

6. Pursuant to authority conferred upon the Board of Directors by the Amended and Restated Articles of Incorporation of the Corporation, as amended, and pursuant to the provisions of Section 78.1955 of the General Corporation Law of Nevada, said Board of Directors, at a special meeting held on May 22, 2006, adopted a resolution establishing the rights, preferences, privileges and restrictions of, and the number of shares comprising, the Corporation's Series E Convertible Preferred Stock, which resolution is as follows:

RESOLVED, that a series of Preferred Stock in the Corporation, having the rights, preferences, privileges and restrictions, and the number of shares constituting such series and the designation of such series, set forth below be, and it hereby is, authorized by the Board of Directors of the Corporation pursuant to authority given by the Corporation's Certificate of Incorporation.

NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors hereby fixes and determines the Determinations of, the number of shares constituting, and the rights, preferences, privileges and restrictions relating to, a new series of Preferred Stock as follows:

### SERIES E CONVERTIBLE PREFERRED STOCK

1. <u>Designation, Amount and Par Value</u>. The series of preferred stock shall be designated as the Corporation's Series E Convertible Preferred Stock (the "**Series E Preferred Stock**"), and the number of shares so designated shall be 130,000. Each share of Series E Preferred Stock shall have no par value and a stated value equal to $50 (the "**Stated Value**").

2. <u>Definitions</u>. In addition to the terms defined elsewhere in this Certificate of Designations, (a) the terms set forth in Exhibit A hereto have the meanings indicated therein, and (b) the following terms have the meanings indicated:

"**Conversion Price**" means the Fixed Conversion Price, as adjusted pursuant to this Certificate of Designations.

"**Dividend Period**" means a period of six months for the calculation of the dividend payable to the Holders, provided that any such period (i) shall start on the last day of the preceding period (other than the Initial Dividend Period); and (ii) which would otherwise end on a day which is not a Trading Day shall be extended to the next succeeding day which is a Trading Day and the following dividend period shall then end on the day on which it would have ended if the preceding dividend period had not been so extended.

"**Equity Conditions**" means, with respect to a specified issuance of Common Stock, that each of the following conditions is satisfied: (i) the number of authorized but unissued and otherwise unreserved shares of Common Stock is sufficient for such issuance; (ii) such shares of Common Stock are registered for resale by the Holders and may be sold by the Holders pursuant to an effective Underlying Shares Registration Statement or all such shares may be sold without volume restrictions pursuant to Rule 144(k) under the Securities Act; (iii) the Common Stock is listed or quoted (and is not suspended from trading) on an Eligible Market and such shares of Common Stock are approved for listing upon issuance; (iv) such issuance would be permitted in full without violating Section 17 hereof or the rules or regulations of any Trading Market; (v) no Bankruptcy Event has occurred; (vi) the Company has not failed for any reason to deliver a certificate evidencing any Securities to a Holder as required pursuant to any Transaction Document within five Trading Days after delivery of notice of failure to deliver by Holder and none of the exercise or conversion rights of the Holders pursuant to the Transaction Documents are suspended for any reason other than a breach of the

2

Transaction Documents by the Holders; (vii) the Company has not failed to make any cash payment required under the Transaction Documents or if the Company has failed in making any payment under the Transaction Documents, such failure has been or will be cured within five Trading Days after notice of such default was first given to the Company by a Holder; or (viii) the Company has not issued any equity securities of the Company which are senior to the Series E Preferred Stock in right of payment, or with respect to dividends, liquidation or dissolution; and (ix) the Closing Price of the Common Stock is equal to or greater than $0.57.

"**Fixed Conversion Price**" means $2.76.

"**Holder**" means any holder of Series E Preferred Stock.

"**Initial Dividend Period**" means the period beginning on the Closing Date and ending on June 30, 2006.

"**Junior Securities**" means the (i) Common Stock and all other equity or equity equivalent securities of the Corporation outstanding as of the date hereof (including the Series C Preferred Stock and the Series D Preferred Stock) and (ii) all equity or equity equivalent securities issued by the Corporation after the Closing Date.

"**LIBOR**" means, in respect of a six-month Dividend Period (i) the rate of interest per annum (expressed with a maximum of 4 decimals) offered for deposits in the relevant currency and amount which appears on Telerate page 3750 or on any other relevant Telerate, Bloomberg or Reuter page as of 11:00 a.m. London time two (2) Business Days prior to the commencement of the relevant Dividend Period; or (ii) should such quotation not be published on the relevant day and time, such interest rate per annum according to such other widely published LIBOR quotation as the Company may select for the relevant Dividend Period as of 11 a.m. London time two (2) Business Days prior to the commencement of the Dividend Period.

"**Original Issue Date**" means the date of the first issuance of any shares of the Series E Preferred Stock regardless of the number of transfers of any particular shares of Series E Preferred Stock and regardless of the number of certificates that may be issued to evidence such Series E Preferred Stock.

"**Purchase Agreement**" means the Securities Purchase Agreement, dated as of May 23, 2006, among the Corporation and the original purchasers of the Series E Preferred Stock.

3. <u>Dividends</u>.

(a) Holders shall be entitled to receive, out of funds legally available therefor, and the Corporation shall pay, cumulative dividends on the Series E Preferred Stock at the rate per share (as a percentage of the Stated Value per share) (as adjusted for any stock split, stock dividend, stock combination or other similar transactions with respect to the Series E Preferred Stock) of LIBOR plus 300 basis points per annum, payable semi-annually in arrears commencing on June 30, 2006, with respect to the Initial Dividend Period, and on each December 31 and June

30 of each year thereafter for each subsequent Dividend Period (each, a "**Dividend Payment Date**"). Dividends on the Series E Preferred Stock shall be calculated on the basis of a 360-day year, shall accrue daily commencing on the Original Issue Date, and shall be deemed to accrue from such date whether or not earned or declared and whether or not there are profits, surplus or other funds of the Corporation legally available for the payment of dividends.

(b) Subject to the conditions and limitations set forth below, the Corporation may pay required dividends (i) in cash or (ii) in Common Stock. The Corporation must deliver written notice (the "**Dividend Notice**") to the Holders indicating the manner in which it intends to pay dividends at least fifteen (15) Trading Days prior to each Dividend Payment Date, but the Corporation may indicate in any such notice that the election contained therein shall continue for subsequent Dividend Payment Dates until revised. Failure to timely provide such written notice shall be deemed an election by the Corporation to pay the dividend in cash. All dividends payable in respect of the Series E Preferred Stock on any Dividend Payment Date must be paid in the same manner.

(c) Notwithstanding the foregoing, the Corporation may not pay dividends by issuing Common Stock unless, at such time, the Equity Conditions are satisfied (or waived in writing by the applicable Holder) with respect to such Common Stock dividend shares and all of the Underlying Shares then issuable upon conversion in full of all the outstanding Series E Preferred Stock. Further, notwithstanding any other provision of this Certificate of Designation, the Corporation shall not be entitled to pay dividends by issuing Common Stock unless the Company has obtained shareholder approval, if required, for the issuance in accordance with the applicable rules and regulations of the Eligible Market.

(d) So long as any Series E Preferred Stock is outstanding, (i) neither the Corporation nor any Subsidiary shall, directly or indirectly, redeem, purchase or otherwise acquire any Junior Securities or set aside any monies for such a redemption, purchase or other acquisition, except for any redemptions or conversions of Series C Preferred Stock or Series D Preferred Stock for the Common Stock of the Corporation, and (ii) the Corporation shall not pay or declare any dividend or make any distribution on any Junior Securities, except pro rata stock dividends on the Common Stock payable in additional shares of Common Stock and dividends due and paid in the ordinary course on preferred stock of the Corporation, in each case only at such times as the Corporation is in compliance with its payment and other obligations hereunder.

(e) In the event that the Corporation elects to pay dividends in shares of Common Stock, the number of shares of Common Stock to be issued to each Holder as such dividend shall be (i) determined by dividing the total dividend then payable to such Holder by the Dividend Conversion Price (as defined below) as of the applicable Dividend Payment Date, and rounding up to the nearest whole share, and (ii) paid to such Holder in accordance with Section 3(f) below. The term "**Dividend Conversion Price**" shall mean the lesser of (i) 92.5% of the arithmetic average of the Volume Weighted Average Prices of Common Stock for the twenty (20) consecutive Trading Days immediately prior to the applicable Dividend Payment Date (not including such date), as appropriately adjusted for any stock dividend, stock split, stock combination or other similar transaction during such 20 Trading Day period, and (ii) the Conversion Price.

4

(f) In the event that any dividends are paid in Common Stock the Corporation shall, on or before the fifth (5th) Trading Day following the applicable Dividend Payment Date, (i) issue and deliver to such Holder a certificate, registered in the name of the Holder or its designee, for the number of shares of Common Stock to which the Holder shall be entitled, or (ii) subject to the request of the Holder and provided that (a) a registration statement covering the resale of the shares of Common Stock to which the holder shall be entitled is effective under the Securities Act and (b) the Holder has complied with the provisions of Section 6 of the Registration Rights Agreement, credit the number of shares of Common Stock to which the Holder shall be entitled to the Holder's or its designee's balance account with The Depository Trust Corporation ("**DTC**") through its Deposit Withdrawal Agent Commission System.

4. Registration of Series E Preferred Stock. The Corporation shall register shares of the Series E Preferred Stock, upon records to be maintained by the Corporation for that purpose (the "**Series E Preferred Stock Register**"), in the name of the record Holders thereof from time to time. The Corporation may deem and treat the registered Holder of shares of Series E Preferred Stock as the absolute owner thereof for the purpose of any conversion hereof or any distribution to such Holder, and for all other purposes, absent actual notice to the contrary.

5. Registration of Transfers. The Corporation shall register the transfer of any shares of Series E Preferred Stock in the Series E Preferred Stock Register, upon surrender of certificates evidencing such Shares to the Corporation at its address specified herein. Upon any such registration or transfer, a new certificate evidencing the shares of Series E Preferred Stock so transferred shall be issued to the transferee and a new certificate evidencing the remaining portion of the shares not so transferred, if any, shall be issued to the transferring Holder.

6. Liquidation.

(a) In the event of any liquidation, dissolution or winding up of the Corporation, either voluntary or involuntary (a "**Liquidation Event**"), the Holders of Series E Preferred Stock shall be entitled to receive, prior and in preference to any distribution of any of the assets or surplus funds of the Corporation to the holders of Junior Securities by reason of their ownership thereof, an amount per share in cash equal to the Stated Value for each share of Series E Preferred Stock then held by them (as adjusted for any stock split, stock dividend, stock combination or other similar transactions with respect to the Series E Preferred Stock), plus all accrued but unpaid dividends on such Series E Preferred Stock as of the date of such event (the "**Series E Preferred Stock Liquidation Preference**"). If, upon the occurrence of a Liquidation Event, the assets and funds thus distributed among the holders of the Series E Preferred Stock shall be insufficient to permit the payment to such Holders of the full Series E Preferred Stock Liquidation Preference, then the entire assets and funds of the Corporation legally available for distribution shall be distributed ratably among the Holders of the Series E Preferred Stock in proportion to the aggregate Series E Preferred Stock Liquidation Preference that would otherwise be payable to each of such Holders. Such payment shall constitute payment in full to the holders of the Series E Preferred Stock upon the Liquidation Event. After such payment shall have been made in full, or funds necessary for such payment shall have been set aside by the Corporation in trust for the account of the holders of Series E Preferred Stock, so as to be available for such payment, such holders of Series E Preferred Stock shall be entitled to no further participation in the distribution of the assets of the Corporation. The purchase or redemption by the Corporation

of stock of any class, in any manner permitted by law, shall not, for the purposes of this Certificate of Designations, be deemed to be a Liquidation Event. Neither the consolidation or merger of the Corporation with or into any other Person, nor the sale or transfer by the Corporation of less than substantially all of its assets shall, for the purposes of this Certificate of Designations, be deemed to be a Liquidation Event.

(b) In the event of a Liquidation Event, following completion of the distributions required by the first sentence of paragraph (a) of this Section 6, if assets or surplus funds remain in the Corporation, the holders of the Junior Securities shall share in all remaining assets of the Corporation, in accordance with the General Corporation Law of Nevada and the Restated Articles of Incorporation of the Corporation.

(c) The Corporation shall provide written notice of any Liquidation Event to each record Holder not less than 30 days prior to the payment date or effective date thereof, provided that such information shall be made known to the public prior to or in conjunction with such notice being provided to the Holders.

7. Conversion.

(a) Conversion at Option of Holder. At the option of any Holder, any Series E Preferred Stock held by such Holder may be converted into Common Stock based on the Conversion Price then in effect for such Series E Preferred Stock. A Holder may convert Series E Preferred Stock into Common Stock pursuant to this paragraph at any time and from time to time after the Original Issue Date, by delivering to the Corporation a Conversion Notice, in the form attached hereto, appropriately completed and duly signed, and the date any such Conversion Notice is delivered to the Corporation (as determined in accordance with the notice provisions hereof) is a "**Conversion Date.**"

(b) Conversion at Option of Corporation.

(i) If, at any time after the Effective Date, the average arithmetic Closing Price for fifteen (15) consecutive Trading Days exceeds $5.00 (as adjusted for any stock dividend, stock split, stock combination or other similar transaction after the Original Issue Date) (the "**Threshold Price**"), the Corporation may require the Holders to convert all or any part of the shares of Series E Preferred Stock into Common Stock based on the Conversion Price. The Corporation may require a conversion pursuant to this paragraph by delivering irrevocable written notice of such election to the Holders, and the tenth (10th) Trading Day after the date any such notice is delivered to the Holders (as determined in accordance with the notice provisions hereof) will be the "**Conversion Date**" for such required conversion. Notwithstanding the foregoing, the Corporation may not require any conversion under this paragraph (and any notice thereof will be void), unless (A) from the period commencing on the Corporation's delivery of the irrevocable written notice through the Conversion Date, the Equity Conditions are satisfied (or waived in writing by the applicable Holder) on each Trading Day with respect to all of the Underlying Shares then issuable upon conversion in full of all outstanding Series E Preferred Stock. Any conversion pursuant to this Section 7(b) shall be pro rata among all of the Holders.

6

    (ii) If a Holder asserts that a Conversion required by the Corporation will cause such Holder's beneficial ownership of the Corporation's Common Stock to exceed the Maximum Percentage (as defined in Section 17(a) hereof) (an "**Asserting Holder**"), the Corporation shall require the Asserting Holder to convert only that number of shares of Series E Preferred Stock that would not cause the Asserting Holder's beneficial ownership to exceed the Maximum Percentage. Under such circumstances, the Corporation may require all other Holders, on a pro-rata basis up to the total number of shares of Series E Preferred Stock held in the aggregate by such Holders, to convert the balance of the Series E Preferred Stock that the Corporation was unable to require the Asserting Holder to convert.

  8. <u>Mechanics of Conversion</u>.

    (a) The number of Underlying Shares issuable upon any conversion of a share of Series E Preferred Stock hereunder shall equal (i) the Stated Value of such share of Series E Preferred Stock to be converted, divided by the Conversion Price on the Conversion Date, plus (ii) the amount of any accrued but unpaid dividends on such share of Series E Preferred Stock through the Conversion Date, divided by the Conversion Price on the Conversion Date.

    (b) Upon conversion of any share of Series E Preferred Stock, and provided that the Holder has complied with the provisions of Section 6 of the Registration Rights Agreement, the Corporation shall promptly (but in no event later than three Trading Days after the Conversion Date) issue or cause to be issued and cause to be delivered to or upon the written order of the Holder and in such name or names as the Holder may designate a certificate for the Underlying Shares issuable upon such conversion, free of restrictive legends unless a registration statement covering the resale of the Underlying Shares and naming the Holder as a selling stockholder thereunder is not then effective and such Underlying Shares are not then freely transferable without volume restrictions pursuant to Rule 144 under the Securities Act. The Holder, or any Person so designated by the Holder to receive Underlying Shares, shall be deemed to have become holder of record of such Underlying Shares as of the Conversion Date. The Corporation shall, upon request of the Holder, use its best efforts to deliver Underlying Shares hereunder electronically through the DTC or another established clearing corporation performing similar functions, and shall issue such Underlying Shares in the same manner as dividend payment shares are issued pursuant to Section 3(f) above.

    (c) A Holder shall not be required to deliver the original certificate(s) evidencing the Series E Preferred Stock being converted in order to effect a conversion of such Series E Preferred Stock. Execution and delivery of the Conversion Notice shall have the same effect as cancellation of the original certificate(s) and issuance of a new certificate evidencing the remaining shares of Series E Preferred Stock. Upon surrender of a certificate following one or more partial conversions, the Corporation shall promptly deliver to the Holder a new certificate representing the remaining shares of Series E Preferred Stock.

(d) The Corporation's obligations to issue and deliver Underlying Shares upon conversion of Series E Preferred Stock in accordance with the terms hereof are absolute and unconditional, irrespective of any action or inaction by any Holder to enforce the same, any waiver or consent with respect to any provision hereof, the recovery of any judgment against any Person or any action to enforce the same, or any setoff, counterclaim, recoupment, limitation or termination, or any breach or alleged breach by any Holder or any other Person of any obligation to the Corporation or any violation or alleged violation of law by any Holder or any other Person, and irrespective of any other circumstance which might otherwise limit such obligation of the Corporation to any Holder in connection with the issuance of such Underlying Shares.

9. Redemption Rights.

   (a) Optional Redemption Right.

      (i) At any time following the 30th Trading Day following the Effective Date, the Corporation shall have the right to repurchase (an "**Optional Redemption**") all of the then outstanding Series E Preferred Stock at a price equal to 105% of the Stated Value of such shares of Series E Preferred Stock (the "**Optional Redemption Price**"), plus all accrued but unpaid dividends thereon to the date of payment, in cash. The Corporation must deliver a notice of the Optional Redemption to the Holders at least twenty (20) Trading Days prior the date of the Optional Redemption (the "**Optional Redemption Date**"), which notice shall state the date of the Optional Redemption Date and the Optional Redemption Price.

      (ii) Upon receipt of payment of the Optional Redemption Price by the Holders of Series E Preferred Stock, each Holder will deliver the certificate(s) evidencing the Series E Preferred Stock redeemed by the Corporation, unless such Holder is awaiting receipt of a new certificate evidencing such shares from the Corporation pursuant to another provision hereof. At any time on or prior to the Optional Redemption Date, the Holders may convert any or all of the shares of Series E Preferred Stock, and the Corporation shall honor any such conversions in accordance with the terms hereof.

   (b) Mandatory Redemption.

      (i) Beginning on the four month anniversary of the Original Issue Date of the Series E Preferred Stock and on the first Trading Day of the calendar quarter commencing September 1, 2006 (month 4) and on the first Trading Day of each of the next 8 calendar quarters thereafter (months 7, 10, 13, 16, 19, 22 and 25 following the Original Issue Date) (each a "**Mandatory Redemption Date**"), the Corporation shall redeem a number of shares of Series E Preferred Stock equal to 8.333% of the shares of Series E Preferred Stock originally issued at a price equal to 100% of the Stated Value of such shares of Series E Preferred Stock, plus all accrued but unpaid dividends thereon to the date of payment (for each redemption on a Mandatory Redemption Date, the "**Mandatory Redemption Price**").

8

(ii) At any time following the 28th month following the Original Issue Date of the Series E Preferred Stock (each a "**Mandatory Redemption II Date**", and together with the Mandatory Redemption Date, each a "**Mandatory Redemption Date**"), the Holder shall have the right to require the Corporation to redeem all or any portion of the outstanding principal amount of the Series E Preferred Stock at a price equal to 100% of the Stated Value of such shares of Series E Preferred Stock, plus all accrued but unpaid dividends thereon to the date of payment (for each redemption on a Mandatory Redemption II Date, the "**Mandatory Redemption II Price**" and together with the Mandatory Redemption Price, each a "**Mandatory Redemption Price**") on each such Mandatory Redemption Date; provided, however, that on the 60th month anniversary of the Original Issue Date, any remaining outstanding principal amount of the Series E Preferred Stock shall be redeemed at the Mandatory Redemption II Price. The Holder must deliver a notice of the redemption at least twenty (20) Trading Days prior to the Mandatory Redemption II Date, which notice shall state the numbers of shares of Series E Preferred Stock to be redeemed at the Mandatory Redemption II Date.

(iii) Subject to the conditions and limitations set forth below, the Corporation may pay a Mandatory Redemption Price (i) in cash or (ii) in Common Stock. The Corporation must deliver written notice (the "**Mandatory Redemption Notice**") to the Holders indicating the manner in which it intends to pay a Mandatory Redemption Price at least seven (7) Trading Days prior to the applicable Mandatory Redemption Date. Failure to timely provide such written notice shall be deemed an election by the Corporation to pay such Mandatory Redemption Price in cash.

(iv) Notwithstanding the foregoing, the Corporation may not pay a Mandatory Redemption Price by issuing Common Stock unless, at such time, the Equity Conditions are satisfied (or waived in writing by the applicable Holder) with respect to such Common Stock shares and all of the Underlying Shares then issuable upon conversion in full of all the outstanding Series E Preferred Stock.

(v) In the event that the Corporation elects to pay a Mandatory Redemption Price in shares of Common Stock, the number of shares of Common Stock to be issued to each Holder on the applicable Mandatory Redemption Date shall be (i) determined by dividing the total Mandatory Redemption Price then payable to such Holder by the Redemption Market Price (as defined below) as of the applicable Mandatory Redemption Date, and rounding up to the nearest whole share, and (ii) paid to such Holder in accordance with Section 9(c)(vi) below. The term "**Redemption Market Price**" shall mean the lesser of (i) 92.5% of the arithmetic average of the Volume Weighted Average Prices of Common Stock for the twenty (20) consecutive Trading Days immediately prior to the applicable

9