# EXHIBIT F

# Part 2 of 3

Mandatory Redemption Date (not including such date), as appropriately adjusted for any stock dividend, stock split, stock combination or other similar transaction during such 20 Trading Day period, and (ii) the Conversion Price. Notwithstanding any other provision of this Certificate of Designation, the Corporation shall not be entitled to pay a Mandatory Redemption Price in shares of Common Stock unless the Company has obtained shareholder approval, if required, for the issuance in accordance with the applicable rules and regulations of the Eligible Market.

(vi) In the event that a Mandatory Redemption Price is paid in Common Stock the Corporation shall, within two Trading Days of the applicable Mandatory Redemption Date, (i) issue and deliver to such Holder a certificate, registered in the name of the Holder or its designee, for the number of shares of Common Stock to which the Holder shall be entitled, or (ii) if the Holder has notified the Corporation that this clause (ii) shall apply, provided that the Holder has complied with the provisions of Section 6 of the Registration Rights Agreement, credit the number of shares of Common Stock to which the Holder shall be entitled to the Holder's or its designee's balance account with DTC through its Deposit Withdrawal Agent Commission System.

10. Triggering Events.

(a) During the first fifteen (15) Trading Days following the occurrence of a Triggering Event, each Holder shall have the option to elect, by notice to the Corporation (an "**Event Notice**"), to require the Corporation to repurchase all or any portion of the Series E Preferred Stock then held by such Holder, at a price per share equal to the Stated Value plus all accrued but unpaid dividends thereon through the date of payment. The aggregate amount payable pursuant to the preceding sentence is referred to as the "**Event Price**." The Corporation shall pay the aggregate Event Price to each Holder no later than the sixtieth day following the date of delivery of the Event Notice, and upon receipt thereof such Holder shall deliver original certificates evidencing the shares of Series E Preferred Stock and Underlying Shares so repurchased to the Corporation (to the extent such certificates have been delivered to the Holder).

(b) Upon the occurrence of any Bankruptcy Event, the Corporation shall immediately be obligated, without any further action by any Holder, to repurchase all outstanding shares of Series E Preferred Stock and all such Underlying Shares at the Event Price pursuant to the preceding paragraph as if each Holder had delivered an Event Notice immediately prior to the occurrence of such Bankruptcy Event.

11. Voting Rights. Except as otherwise provided herein or as required by applicable law, the Holders of the Series E Preferred Stock shall not be entitled to vote on matters on which holders of Common Stock are entitled to vote. So long as any shares of Series E Preferred Stock are outstanding, except as otherwise provided herein, the Corporation shall not, without the affirmative vote of the Holders of a majority of the shares of Series E Preferred Stock then outstanding, (a) alter or change adversely the powers, preferences or rights given to the Series E Preferred Stock or alter or amend this Certificate of Designation (whether by merger,

10

reorganization, consolidation or otherwise), (b) authorize or create any class of stock ranking as to dividends, redemption or distribution of assets upon a Liquidation Event or Change of Control senior to or otherwise pari passu with the Series E Preferred Stock; provided, however, that the Corporation shall be permitted to issue without the consent of the Holders of the Series E Preferred Stock any class of preferred stock ranking pari passu with the Series E Preferred Stock if the conversion price of such class of preferred stock, directly or indirectly to Common Stock, is greater than the Conversion Price for the Series E Preferred Stock, (c) amend its certificate or articles of incorporation or other charter documents so as to affect adversely any rights of the Holders (whether by merger, reorganization, consolidation or otherwise), (d) increase the authorized number of shares of Series E Preferred Stock, (e) redeem, repurchase or otherwise acquire any share of Junior Securities, (f) increase the authorized number of shares of Series B Preferred Stock, (g) issue any Series A Preferred Stock, Series B Preferred Stock, Series C Preferred Stock or Series D Preferred Stock, (h) issue greater than 130,000 shares of Series E Preferred Stock, or (i) enter into any agreement with respect to the foregoing.

    12. Charges, Taxes and Expenses. Issuance of certificates for shares of Series E Preferred Stock and for Underlying Shares issued on conversion of (or otherwise in respect of) the Series E Preferred Stock shall be made without charge to the Holders for any issue or transfer tax, withholding tax, transfer agent fee or other incidental tax or expense in respect of the issuance of such certificates, all of which taxes and expenses shall be paid by the Corporation; provided, however, that the Corporation shall not be required to pay any tax that may be payable in respect of any transfer involved in the registration of any certificates for Common Stock or Series E Preferred Stock in a name other than that of the Holder. The Holder shall be responsible for all other tax liability that may arise as a result of holding or transferring the Series E Preferred Stock or receiving Underlying Shares in respect of the Series E Preferred Stock.

    13. Replacement Certificates. If any certificate evidencing Series E Preferred Stock or Underlying Shares is mutilated, lost, stolen or destroyed, the Corporation shall issue or cause to be issued in exchange and substitution for and upon cancellation hereof, or in lieu of and substitution for such certificate, a new certificate, but only upon receipt of evidence reasonably satisfactory to the Corporation of such loss, theft or destruction and customary and reasonable indemnity, if requested. Applicants for a new certificate under such circumstances shall also comply with such other reasonable regulations and procedures and pay such other reasonable third-party costs as the Corporation may prescribe.

    14. Reservation of Underlying Shares. The Corporation covenants that it shall at all times reserve and keep available out of the aggregate of its authorized but unissued and otherwise unreserved Common Stock, solely for the purpose of enabling it to issue Underlying Shares as required hereunder, the number of Underlying Shares which are then issuable and deliverable upon the conversion of (and otherwise in respect of) all outstanding Series E Preferred Stock (taking into account the adjustments of Section 15), free from preemptive rights or any other contingent purchase rights of persons other than the Holder. The Corporation covenants that all Underlying Shares so issuable and deliverable shall, upon issuance in accordance with the terms hereof, be duly and validly authorized, issued and fully paid and nonassessable. The Corporation covenants that it shall use its best efforts to satisfy each of the Equity Conditions.

15. <u>Certain Adjustments</u>. The Conversion Price is subject to adjustment from time to time as set forth in this Section 15.

(a) <u>Stock Dividends and Splits</u>. If the Corporation, at any time while Series E Preferred Stock is outstanding, (i) pays a stock dividend on its Common Stock or otherwise makes a distribution on any class of capital stock that is payable in shares of Common Stock (other than regular dividends on the Series E Preferred Stock), (ii) subdivides outstanding shares of Common Stock into a larger number of shares, or (iii) combines outstanding shares of Common Stock into a smaller number of shares, then in each such case the Conversion Price shall be multiplied by a fraction of which the numerator shall be the number of shares of Common Stock outstanding immediately before such event and of which the denominator shall be the number of shares of Common Stock outstanding immediately after such event. Any adjustment made pursuant to clause (i) of this paragraph shall become effective immediately after the record date for the determination of stockholders entitled to receive such dividend or distribution, and any adjustment pursuant to clause (ii) or (iii) of this paragraph shall become effective immediately after the effective date of such subdivision or combination.

(b) <u>Pro Rata Distributions</u>. If the Corporation, at any time while Series E Preferred Stock is outstanding, distributes to all holders of Common Stock (i) evidences of its indebtedness, (ii) any security (other than a distribution of Common Stock covered by the preceding paragraph), (iii) rights or warrants to subscribe for or purchase any security, or (iv) any other asset (in each case, "**Distributed Property**"), then in each such case upon any conversion of Series E Preferred Stock that occurs after such record date, such Holder shall be entitled to receive, in addition to the Underlying Shares otherwise issuable upon such conversion, the Distributed Property that such Holder would have been entitled to receive in respect of such number of Underlying Shares had the Holder been the record holder of such Underlying Shares immediately prior to such record date.

(c) <u>Fundamental Transactions</u>. If, at any time while Series E Preferred Stock is outstanding, (i) the Corporation effects any merger or consolidation of the Corporation with or into another Person, (ii) the Corporation effects any sale of all or substantially all of its assets in one or a series of related transactions, (iii) any tender offer or exchange offer (whether by the Corporation or another Person) is completed pursuant to which holders of Common Stock are permitted to tender or exchange their shares for other securities, cash or property, or (iv) the Corporation effects any reclassification of the Common Stock or any compulsory share exchange pursuant to which the Common Stock is effectively converted into or exchanged for other securities, cash or property (other than as a result of a subdivision or combination of shares of Common Stock covered by Section 15(a) above) (in any such case, a "**Fundamental Transaction**"), then upon any subsequent conversion of Series E Preferred Stock, each Holder shall have the right to receive, for each Underlying Share that would have been issuable upon such conversion absent such Fundamental Transaction, the same kind and amount of securities, cash or property as it would have been entitled to receive upon the occurrence of such Fundamental Transaction if it had been, immediately prior to such Fundamental Transaction, the holder of one share of Common Stock (the "**Alternate Consideration**"). For purposes of any such conversion, the determination of the Conversion Price shall be appropriately adjusted to apply to such Alternate Consideration based on the amount of Alternate Consideration issuable in respect of one share of Common Stock in such Fundamental Transaction, and the Corporation

12

shall apportion the Conversion Price among the Alternate Consideration in a reasonable manner reflecting the relative value of any different components of the Alternate Consideration. If holders of Common Stock are given any choice as to the securities, cash or property to be received in a Fundamental Transaction, then each Holder shall be given the same choice as to the Alternate Consideration it receives upon any conversion of Series E Preferred Stock following such Fundamental Transaction. To the extent necessary to effectuate the foregoing provisions, any successor to the Corporation or surviving entity in such Fundamental Transaction shall issue to the Holder a new series of preferred stock consistent with the foregoing provisions and evidencing the Holders' right to convert such preferred stock into Alternate Consideration. The terms of any agreement pursuant to which a Fundamental Transaction is effected shall include terms requiring any such successor or surviving entity to comply with the provisions of this paragraph (c) and insuring that the Series E Preferred Stock (or any such replacement security) will be similarly adjusted upon any subsequent transaction analogous to a Fundamental Transaction.

(d) Subsequent Equity Sales.

(i) If, at any time while any shares of Series E Preferred Stock are outstanding, the Corporation or any Subsidiary issues additional shares of Common Stock or rights, warrants, options or other securities or debt convertible, exercisable or exchangeable for shares of Common Stock or otherwise entitling any Person to acquire shares of Common Stock (collectively, "**Common Stock Equivalents**") at an effective net price to the Corporation per share of Common Stock (the "**Effective Price**") less than the Conversion Price, then the Conversion Price shall be reduced to equal the Effective Price. For purposes of this paragraph, in connection with any issuance of any Common Stock Equivalents, (A) the maximum number of shares of Common Stock issuable at any time upon conversion, exercise or exchange of such Common Stock Equivalents (the "**Deemed Number**") shall be deemed to be outstanding upon issuance of such Common Stock Equivalents, (B) the Effective Price applicable to such Common Stock shall equal the minimum dollar value of consideration payable to the Corporation to purchase such Common Stock Equivalents and to convert, exercise or exchange them into Common Stock (net of any discounts, fees, commissions and other expenses), divided by the Deemed Number, and (C) no further adjustment shall be made to the Conversion Price upon the actual issuance of Common Stock upon conversion, exercise or exchange of such Common Stock Equivalents.

(ii) If, at any time while Series E Preferred Stock is outstanding, the Corporation or any Subsidiary issues Common Stock Equivalents with an Effective Price or a number of underlying shares that floats or resets or otherwise varies or is subject to adjustment based (directly or indirectly) on market prices of the Common Stock (a "**Floating Price Security**"), then for purposes of applying the preceding paragraph in connection with any subsequent conversion, the Effective Price will be determined separately on each Conversion Date and will be deemed to equal the lowest Effective Price at which any holder of such Floating Price Security is entitled to acquire Common Stock on such Conversion Date (regardless of whether any such holder actually acquires any shares on such date).

(iii) Notwithstanding the foregoing, no adjustment will be made under this paragraph (d) in respect of the issuance of Excluded Stock.

13

(e) <u>Calculations</u>. All calculations under this Section 15 shall be made to the nearest cent or the nearest 1/100th of a share, as applicable. The number of shares of Common Stock outstanding at any given time shall not include shares owned or held by or for the account of the Corporation, and the disposition of any such shares shall be considered an issue or sale of Common Stock.

(f) <u>Notice of Adjustments</u>. Upon the occurrence of each adjustment pursuant to this Section 15, the Corporation at its expense will promptly compute such adjustment in accordance with the terms hereof and prepare a certificate describing in reasonable detail such adjustment and the transactions giving rise thereto, including all facts upon which such adjustment is based. Upon written request, the Corporation will promptly deliver a copy of each such certificate to each Holder and to the Corporation's Transfer Agent.

(g) <u>Notice of Corporate Events</u>. If the Corporation (i) declares a dividend or any other distribution of cash, securities or other property in respect of its Common Stock, including without limitation any granting of rights or warrants to subscribe for or purchase any capital stock of the Corporation or any Subsidiary, (ii) authorizes or approves, enters into any agreement contemplating or solicits stockholder approval for any Fundamental Transaction or (iii) authorizes the voluntary dissolution, liquidation or winding up of the affairs of the Corporation, then the Corporation shall deliver to each Holder a notice describing the material terms and conditions of such transaction, at least 20 calendar days prior to the applicable record or effective date on which a Person would need to hold Common Stock in order to participate in or vote with respect to such transaction, and the Corporation will take all steps reasonably necessary in order to insure that each Holder is given the practical opportunity to convert its Series E Preferred Stock prior to such time so as to participate in or vote with respect to such transaction; provided, however, that the failure to deliver such notice or any defect therein shall not affect the validity of the corporate action required to be described in such notice.

16. <u>Change of Control</u>.

(a) <u>Reorganization, Reclassification, Consolidation, Merger or Sale</u>. Any recapitalization, reorganization, reclassification, consolidation, merger, sale of all or substantially all of the Corporation's assets to another Person or other transaction which is effected in such a way that holders of Common Stock are entitled to receive (either directly or upon subsequent liquidation) stock, securities or assets with respect to or in exchange for Common Stock is referred to herein as "**Organic Change**." As long as any share of Series E Preferred Stock is outstanding, prior to the consummation of any (i) sale of all or substantially all of the Corporation's assets to an acquiring Person or (ii) other Organic Change following which the Corporation is not a surviving entity, the Corporation will secure from the Person purchasing such assets or the successor resulting from such Organic Change (in each case, the "**Acquiring Entity**") a written agreement (in form and substance reasonably satisfactory to the Holders of at least a majority of the Series E Preferred Stock then outstanding) to deliver to each Holder of Series E Preferred Stock in exchange for such shares, a security of the Acquiring Entity evidenced by a written instrument substantially similar in form and substance to the Series E Preferred Stock (including, without limitation, having a stated value and liquidation preference equal to the Stated Value and the Series E Preferred Stock Liquidation Preference held by such Holder) and reasonably satisfactory to the Holders of at least a majority of the Series E Preferred

14

Stock then outstanding. Prior to the consummation of any other Organic Change, the Corporation shall make appropriate provision (in form and substance reasonably satisfactory to the Holders of at least a majority of the Series E Preferred Stock then outstanding) to insure that each of the Holders of the Series E Preferred Stock will thereafter have the right to acquire and receive in lieu of or in addition to (as the case may be) the shares of Common Stock immediately theretofore acquirable and receivable upon the conversion of such Holder's Series E Preferred Stock such shares of stock, securities or assets that would have been issued or payable in such Organic Change with respect to or in exchange for the number of shares of Common Stock which would have been acquirable and receivable upon the conversion of such Holder's Series E Preferred Stock as of the date of such Organic Change (without taking into account any limitations or restrictions on the convertibility of the Series E Preferred Stock).

(b) <u>Optional Redemption Upon Change of Control</u>. In addition to the rights of the Holders of Series E Preferred Stock under Section 16(a), upon a Change of Control of the Corporation each Holder of Series E Preferred Stock shall have the right, at such Holder's option, to require the Corporation to redeem all or a portion of such Holder's Series E Preferred Stock at a price per Series E Preferred Stock equal to the Stated Value plus all accrued but unpaid dividends thereon through the date of payment (the "**Change of Control Redemption Price**"). No sooner than 60 days nor later than ten (10) days prior to the consummation of a Change of Control, but not prior to the public announcement of such Change of Control, the Corporation shall deliver written notice thereof via facsimile and overnight courier (a "**Notice of Change of Control**") to each Holder of Series E Preferred Stock. At any time during the period beginning after receipt of a Notice of Change of Control (or, in the event a Notice of Change of Control is not delivered at least ten (10) days prior to a Change of Control, at any time on or after the date which is ten (10) days prior to a Change of Control) and ending on the twentieth day following Holder's receipt of a Notice of Change of Control, any Holder of the Series E Preferred Stock then outstanding may require the Corporation to redeem all or a portion of the Holder's Series E Preferred Stock then outstanding by delivering written notice thereof via facsimile and overnight courier (a "**Notice of Redemption Upon Change of Control**") to the Corporation, which Notice of Redemption Upon Change of Control shall indicate (i) the number of Series E Preferred Stock that such Holder is submitting for redemption, and (ii) the applicable Change of Control Redemption Price, as calculated pursuant to this Section 16(b). Upon the Corporation's receipt of a Notice(s) of Redemption Upon Change of Control from any Holder of Series E Preferred Stock, the Corporation shall promptly, but in no event later than two (2) Trading Days following such receipt, notify each Holder of Series E Preferred Stock by facsimile of the Corporation's receipt of such Notice(s) of Redemption Upon Change of Control. The Corporation shall deliver the applicable Change of Control Redemption Price within sixty (60) days of the consummation of the Change of Control. Payments provided for in this Section 16(b) shall have priority to payments to other stockholders in connection with a Change of Control.

17. <u>Limitation on Conversion</u>.

(a) Notwithstanding anything to the contrary contained herein, the number of shares of Common Stock that may be acquired by any Holder upon any conversion of Series E Preferred Stock (or otherwise in respect of the Series E Preferred Stock) shall be limited to the extent necessary to insure that, following such conversion (or other issuance), the total number of shares of Common Stock then beneficially owned by such Holder and its Affiliates and any other

15

Persons whose beneficial ownership of Common Stock would be aggregated with the Holder's for purposes of Section 13(d) of the Exchange Act, does not exceed 4.999% (the "**Maximum Percentage**") of the total number of issued and outstanding shares of Common Stock (including for such purpose the shares of Common Stock issuable upon such conversion). For such purposes, (i) beneficial ownership shall be determined in accordance with Section 13(d) of the Exchange Act and the rules and regulations promulgated thereunder, and (ii) no Holder shall be allowed to assert beneficial ownership of the securities of the Corporation in combination with one or more other Holders for purposes of asserting that the Maximum Percentage has been reached. Each delivery of a Conversion Notice by a Holder will constitute a representation by such Holder that it has evaluated the limitation set forth in this paragraph and determined that issuance of the full number of Underlying Shares requested in such Conversion Notice is permitted under this paragraph. By written notice to the Corporation, any Holder may waive the provisions of this Section or increase or decrease the Maximum Percentage to any other percentage specified in such notice, but (i) any such waiver or increase will not be effective until the 61st day after such notice is delivered to the Corporation, and (ii) any such waiver or increase or decrease will apply only to such Holder and not to any other Holder.

(b) Notwithstanding anything to the contrary in this Certificate of Designations, if the Corporation has not previously obtained Shareholder Approval (as defined below), then the Corporation may not issue shares of Common Stock in excess of the Issuable Maximum upon conversion of the Series E Preferred Stock at a conversion price which is less than the Closing Price on the Trading Day immediately preceding the Original Issue Date (the "**Threshold Price**"). The "**Issuable Maximum**" means, as of any date, a number of shares of Common Stock equal to 19.99% of the outstanding shares of Common Stock immediately preceding the Closing Date, less such number of shares of Common Stock as have been issued at a price below the Threshold Price upon conversion of the Series E Preferred Stock and Warrants issued under the Purchase Agreement. Each Holder shall be entitled to a portion of the Issuable Maximum equal to the quotient obtained by dividing: (x) the amount of Series E Preferred Stock issued and sold to such Holder on the Original Issue Date by (y) the aggregate amount of all Series E Preferred Stock issued and sold by the Corporation on the Original Issue Date. If any Holder shall no longer hold Series E Preferred Stock, then such Holder's remaining portion of the Issuable Maximum (other than those represented by the remaining portion of the Warrants and the other warrants referenced in the preceding sentence above) shall be allocated pro-rata among the remaining Holders, giving effect to the Corporation's desire to allocate this limitation among the class of securities known as the Series E Preferred Stock. If on any Conversion Date, or at such time as a Holder shall notify the Corporation that the condition in (A) following this clause shall be in effect: (A) the aggregate number of shares of Common Stock that would then be issuable upon conversion in full of all then outstanding principal amount of Series E Preferred Stock would exceed the Issuable Maximum on such date and (B) the Corporation shall not have previously obtained the vote of shareholders applicable to approve the issuance of shares of Common Stock in excess of the Issuable Maximum pursuant to the terms hereof (the "**Shareholder Approval**"), then, the Corporation shall, on such Conversion Date or on any Conversion Date prior to the receipt by the Corporation of the Shareholder Approval, issue to the Holder a number of shares of Common Stock equal to the Issuable Maximum and with respect to the remainder of the principal amount of Series E Preferred Stock then held by the Holders for which a conversion would result in an issuance of shares of Common Stock in excess of the Issuable Maximum, the Corporation must seek Shareholder Approval in accordance with

16

subsection (c) below. The Corporation and the Holder understand and agree that shares of Common Stock issued to and then held by the Holder as a result of conversions of the Series E Preferred Stock shall not be entitled to cast votes on any resolution to obtain Shareholder Approval pursuant hereto.

(c) Shareholder Approval.

(i) The Corporation shall use its best efforts to obtain as soon as possible but in no event later than July 22, 2006 shareholder approval of the issuance of the Underlying Shares with respect to the Series E Preferred Stock, the Warrants issued under the Purchase Agreement and the securities issued under the Amendment (the "**Shareholder Proposal**"), which approval shall meet the requirements of Nasdaq Marketplace Rule 4350(i) set forth in the NASD Manual (the "**Shareholder Approval Date**").

(ii) As soon as practicable following the date of the Original Issue Date, but in no event more than 10 days following the Original Issue Date, the Corporation shall prepare and file with the Commission proxy materials calling a special meeting (the "**Special Meeting**") of its shareholders seeking approval of the Shareholder Proposal. The Corporation shall use its reasonable best efforts to cause such proxy materials to reach the "no further comment" stage as soon as possible (the "**Clearance Date**") and to hold the Special Meeting as soon as possible following the Clearance Date, but in no event later than 45 days following the Clearance Date.

(iii) The Board of Directors shall recommend approval thereof by the Corporation's shareholders. The Corporation shall mail and distribute its proxy materials for the Special Meeting to its shareholders at least 30 days prior to the date of the Special Meeting and shall actively solicit proxies to vote for the Shareholder Proposal. The Corporation shall provide the Holders an opportunity to review and comment on such proxy materials by providing (which may be by e-mail) copies of such proxy materials and any revised preliminary proxy materials to the Holders at least three (3) days prior to their filing with the Commission. The Corporation shall provide the Holders (which may be by e-mail) copies of all correspondence from or to the Commission or its staff concerning the proxy materials for the Special Meeting promptly after the same is sent or received by the Corporation and summaries of any comments of the Commission's staff which the Corporation receives orally promptly after receiving such oral comments. The Corporation shall (i) furnish to the Holders and their counsel (which may be by e-mail) a copy of its definitive proxy materials for the Special Meeting and any amendments or supplements thereto promptly after the same are first used, mailed to shareholders or filed with the Commission, (ii) inform the Holders of the progress of solicitation of proxies for such meeting and (iii) inform the Holders of any adjournment of the Special Meeting and shall report the result of the vote of shareholders on the Shareholder Proposal at the conclusion of the Special Meeting. In connection with the Special Meeting, the Corporation shall hire, at its expense, a nationally recognized proxy solicitation firm, selected by the Holders, to assist it in obtaining the necessary shareholder votes to approve the Shareholder Proposal.

17

(iv) If for any reason the Shareholder Proposal is not approved at the Special Meeting, the Corporation will take such additional acts or actions as are necessary to hold an additional Special Meeting to consider the Shareholder Proposal and in conjunction therewith shall hire a nationally recognized proxy solicitation firm, selected by the Holders which is reasonably satisfactory to the Corporation, to assist it in obtaining the necessary shareholder votes to approve the Shareholder Proposal. Such additional Special Meetings shall be held no less frequent than every 3 months until such Shareholder Proposal is approved or the Series E Preferred Stock and the Warrant D are no longer outstanding. The Corporation shall bear all costs and expenses of the preparation and filing of any and all proxy materials and Special Meetings, including but not limited to the costs and expenses of the proxy solicitation firm if needed.

18. Fractional Shares. The Corporation shall not be required to issue or cause to be issued fractional Underlying Shares on conversion of Series E Preferred Stock. If any fraction of an Underlying Share would, except for the provisions of this Section, be issuable upon conversion of Series E Preferred Stock, the number of Underlying Shares to be issued will be rounded up to the nearest whole share.

19. Notices. Any and all notices or other communications or deliveries hereunder (including without limitation any Conversion Notice) shall be in writing and shall be deemed given and effective on the earliest of (i) the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section prior to 6:30 p.m. (New York City time) on a Trading Day, (ii) the next Trading Day after the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section on a day that is not a Trading Day or later than 6:30 p.m. (New York City time) on any Trading Day, (iii) the Trading Day following the date of mailing, if sent by nationally recognized overnight courier service, or (iv) upon actual receipt by the party to whom such notice is required to be given. The addresses for such communications shall be: (i) if to the Corporation, to 339 S. Cheryl Lane, City of Industry, California 91789, facsimile: 909-598-8838, attention Chief Financial Officer, or (ii) if to a Holder, to the address or facsimile number appearing on the Corporation's stockholder records or such other address or facsimile number as such Holder may provide to the Corporation in accordance with this Section.

20. Miscellaneous.

(a) The headings herein are for convenience only, do not constitute a part of this Certificate of Designations and shall not be deemed to limit or affect any of the provisions hereof.

(b) No provision of this Certificate of Designations may be amended, except in a written instrument signed by the Company and Holders of at least 60% of the shares of Series E Preferred Stock then outstanding.

(c) The Series E Preferred Stock is (i) senior to all equity interests in the Company outstanding as of the Closing Date in right of payment, whether with respect to dividends or upon liquidation or dissolution, or otherwise and (ii) will be senior to all other equity or equity equivalent securities issued by the Corporation after the Closing Date.

18